**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **M.C.-1, M.C.-2, K.S.-1, and K.S.-2**

**No. 20-0508** (Kanawha County 19-JA-227, 19-JA-228, 19-JA-229, and 19-JA-230)

**MEMORANDUM DECISION**

Petitioner Mother R.S., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's May 27, 2020, order terminating her parental rights to M.C.-1, M.C.-2, K.S.-1, and K.S.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Bryan B. Escue, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period or a less restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner was charged with four counts of gross child neglect creating a substantial risk of death or serious bodily injury, and one count of possession with intent to deliver after investigators found 276 grams of marijuana in her home. The DHHR also alleged that another individual in petitioner's home was arrested for possession with intent to deliver methamphetamine and possession of a firearm by a prohibited person. The DHHR further alleged that the home lacked running water and was in deplorable condition. The home was later condemned. The DHHR concluded that petitioner failed to provide the children with necessary food, clothing, supervision, and housing and was not

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as two pairs of children share the same initials, we refer to them as M.C.-1 and M.C.-2 and K.S.-1 and K.S.-2, respectively, throughout this memorandum decision.

sufficiently motivated or organized to provide for their needs on an ongoing basis. The DHHR later amended the petition to include allegations that petitioner struck the children on their genitals with a belt and that the children witnessed petitioner abuse controlled substances.

The circuit court held adjudicatory hearings in May, June, and August of 2019. The DHHR presented testimony from the officer that investigated and, as noted above, ultimately arrested petitioner and the other individual in the home. The officer testified to the deplorable condition of the home, of which photographic evidence was admitted, as well as the controlled substances found within the home. The DHHR also presented testimony of the children's forensic interviewer, who testified regarding the children's disclosures. Ten-year-old K.S.-1 disclosed multiple instances of petitioner hitting her with the "metal part" of the belt and being bruised thereafter. Eleven-year-old K.S.-2 disclosed witnessing petitioner moving "crunched up white stuff" with a credit card before putting it into a lightbulb but indicated that he was not sure what occurred afterwards. K.S.-2 clarified that petitioner "[does not] do ice. She sells it." Both children disclosed domestic violence between petitioner and the father of M.C.-1 and M.C.-2. Petitioner denied the deplorable condition of the home and denied that she left marks on the children after hitting them with a belt. Petitioner further denied using controlled substances and denied possession of the controlled substances found in her home. She admitted that domestic violence occurred in the home, but testified that she had ended the relationship with her abusive partner. Finally, when petitioner was confronted with two drug screens conducted by her probation officer that were positive for methamphetamine, she continued to deny her controlled substance use. Ultimately, the circuit court adjudicated the children as abused and neglected children and adjudicated petitioner as an abusing parent. Thereafter, petitioner moved for a post-adjudicatory improvement period.

The circuit court held a dispositional hearing in January of 2020 and the final dispositional hearing in March of 2020. Petitioner's forensic evaluator testified that during the evaluation, petitioner denied the allegations in the petition. When asked what she would do differently in the future, petitioner stated that she would not "let[] anyone in again," referring to the individual who was arrested in her home with methamphetamine and a firearm on his person. The evaluator explained that she gave petitioner an "extremely poor" prognosis for improvement based on petitioner's failure to acknowledge the conditions of abuse and neglect and her lack of desire to change her behavior. Petitioner countered that she acknowledged the conditions of abuse and neglect during her forensic evaluation and stated that she would participate in all services offered to her. Petitioner also testified that she did not have a substance abuse issue and did not "need drugs." Petitioner was sentenced to probation and a term of home confinement as a result of her criminal charges. She testified that she had been incarcerated earlier in March of 2020 because she tested positive for marijuana, which was a violation of her probation. However, the circuit court took judicial notice of a motion filed in petitioner's criminal proceedings that alleged petitioner violated probation by testing positive for methamphetamine and fentanyl and attempting to adulterate a urine specimen.

Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that

termination of petitioner's parental rights was in the children's best interests. Accordingly, the circuit court terminated petitioner's parental rights by its May 27, 2020 order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-adjudicatory improvement period. She asserts that she participated in her parenting and adult life skills classes, every court hearing and related meeting, and her parental psychological evaluation. According to petitioner, she demonstrated by clear and convincing evidence that she was likely to fully participate in an improvement period, and, therefore, the circuit court erred in denying her motion. We disagree.

West Virginia Code § 49-4-610(2)(B) provides that a circuit court may grant a parent a post-adjudicatory improvement period when she "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). In this case, petitioner fails to cite to record in support of her assertion that she fully

---

[2]The father of M.C.-1 and M.C.-2 also had his parental rights terminated below. According to the parties, the permanency plan for these children is adoption in their current placement. The respective fathers of K.S.-1 and K.S.-2 retain their parental rights, and these children have achieved permanency in their custody.

participated in the services provided to her.[3] Indeed, the record is devoid of any testimony regarding petitioner's participation in these services. Rather, the record reflects that petitioner continually denied that she abused or neglected the children. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As noted by petitioner's forensic evaluator, petitioner's continued denial of the conditions of abuse and neglect was a substantial barrier to progress. In light of her failure to acknowledge the conditions of abuse and neglect, we find no error in the circuit court's denial of her motion for a post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in terminating her parental rights rather than imposing a less restrictive dispositional alternative. She contends that the most appropriate disposition for K.S.-1 and K.S.-2 was to dismiss them from the proceeding after they achieved permanency in the custody of their respective fathers.[4] According to petitioner, the conditions of neglect or abuse could have been substantially corrected in a reasonable time, "i.e. during the term of a post-adjudicatory improvement period," at which point she could petition the circuit court for a modification of custody. Upon our review, we find no error below.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." We have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper

---

[3]Petitioner's failure to cite to the record in support of these facts is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. Rule 10(c)(7) requires that "[t]he argument must contain appropriate and specific citations to the record on appeal." This Court has held, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted).

[4]Petitioner does not reference M.C.-1 or M.C.-2 in this assignment of error. However, this Court's reasoning in affirming the termination of petitioner's parental rights to K.S.-1 and K.S.-2 is applicable to M.C.-1 and M.C.-2 as well.

4

caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* As mentioned above, petitioner refused to acknowledge the conditions of neglect or abuse or her responsibility for the same. This is clear evidence that petitioner was unable to solve the problems on her own or with help from the DHHR. Furthermore,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future is fully supported by the record, and, therefore, termination of her parental rights to K.S.-1 and K.S.-2 was permissible without the use of less restrictive dispositional alternatives. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 27, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison